UNITED STTES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DANNY FARRINGTON,

                       Plaintiff,

   -against-

SGT. MICHAEL POOLE, C.O. HEATH
FURBECK, C.O. JOSEPH HALEY, C.O.
ANDREW COHEN, C.O. PADRAIC LYMAN,
C.O. ERIK GETTINGS, C.O. VINCENT
LIVRERI and C.O. DAVI DOLLARD,

                       Defendants.

Civil Action No.: 9:22-cv-356
(GTS/CFH)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Kevin M. Cannizzaro, Esq.
Assistant Albany County Attorney
*Attorneys for Defendants*
NYND Bar Roll No. 519957CC
Albany County Attorney's Office
112 State Street, Room 600
Albany, New York 12207
Tel (518) 447-7110

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................iv

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS................................................................................3

STANDARD OF REVIEW ..............................................................................3

ARGUMENT....................................................................................................5

<u>POINT I.</u>:

PLAINTIFF HAS FAILED TO RAISE AN ISSUE
OF MATERIAL FACT ESTABLISHING A TRIABLE
ISSUE AS TO THE PERSONAL INVOLVEMNET
OF EACH DEFENDANT ................................................................................5

<u>POINT II</u>:

PLAINTIFF'S EXCESSIVE FORCE CLAIM SHOULD BE
ANALYZED UNDER THE EIGHTH AMENDMENT
STANDARD.....................................................................................................6

  (a) Plaintiff's status as a Parole violator subjects his claims
     to Eighth Amendment analysis:.................................................................6

  (b) Plaintiff's excessive force claims fail as a matter of law:.....................8

      (i)    Sgt. Poole's use of force did not violate
           Contemporary standards of decency.........................................8

      (ii)   Several of the individual officers use of force was
           de minimus and they should be dismissed from
           this case...................................................................................12

      (iii)  Plaintiff has failed to establish the subjective
           component in relation to every defendant.................................16

POINT III:

PLAINTIFF'S EXCESSIVE FORCE CLAIMS FAIL UNDER
THE FOURTEENTH AMENDEMNET STANDARD AS
WELL.................................................................................................................17

POINT IV:

THE ALBANY COUNTY DEFENDANTS ARE ALL
ENTITLED TO QUALIFIED IMMUNITY .................................................20

POINT V:

PLAINTIFF'S ARGUMENTS WITH THE CORRECTIONS
OFFICERS OVER LAWFUL ORDERS AND SUBSEQUENT
DISCIPLINE DOES NOT STATE A CAUSE OF ACTION
UNDER THE FIRST AMENDMENT .........................................................22


CONCLUSION....................................................................................................24

## TABLE OF AUTHORITIES

A.S. v. City Sch. Dist. of Albany, 585 F. Supp. 3d 246, 271 (N.D.N.Y. 2022) .............................5

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ...........................................................4

Atkinson v. Huntington, 2016 WL 8735651, at *9-*10 (N.D.N.Y. 2016) ....................................12

Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986) .......................................................................5

Bell v. Wolfish, 441 U.S. 520, 535 (1979) ...................................................................................16

Bennett v. Goord, 343 F.3d 133, 137 (2d Cir.2003) ......................................................................20

Blackwell v. Town of Greenburgh, 2017 WL 1157168, at *11 (S.D.N.Y. 2017) ........................12

Blyden v. Mancusi, 186 F.3d, 252, 262 (2d Cir. 1999) ...................................................................8

Bruno v. City of Schenectady, 2014 WL 689664, at *16 (N.D.N.Y.2014) ...................................11

Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.
 769 F.2d 919, 924 (2d Cir.1985) ..................................................................................................4

Celotex v. Catrett, 477 U.S. 317, 323–24 (1986) ..........................................................................3

Coffey v. Hollenbeck, 2016 WL 770087, at *10 (N.D.N.Y. 2016)...............................................11

Cunningham v. McCluskey, 2011 WL 2791336, at *7 (S.D.N.Y. 2011) ......................................19

Dancy v. McGuinley, 843 F.3d 93, 106 (2d Cir. 2016) ................................................................19

Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017) ......................................................................16

Davis v. Goord, 320 F.3d 346, 352 (2d Cir.2003) ........................................................................20

Encarnacion v. Connors, 2023 WL 6546247, at *2 (N.D.N.Y. Aug. 7, 2023)...............................5

Espinal v. Goord, 554 F.3d 216, 227 (2d Cir.2009) ....................................................................20

Faulk v. Fisher, 545 Fed.Appx. 56, 58 (2d Cir.2013) ..................................................................21

Flemming v. King, 2016 WL 5219995, at *3 (N.D.N.Y. 2016) ....................................................14

Graham v. Connor, 490 U.S. 386, 396 (1989) .............................................................................17

Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir.2004) ....................................................20

Hamilton v. Lyons, 74 F.3d 99, 103 (5th Cir.1996) ......................................................7

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) ........................................................18

Hudson v. McMillian, 503 U.S. 1, at 7 (1992) ..........................................................12

Husbands ex rel. Forde v. City of New York, 335 Fed.Appx. 124, 129 (2d Cir., 2009)...............19

Ingraham v. Wright, 430 U.S. 651, 674 (1977) ........................................................11

Johnson v. Schiff, 2013 WL 5466218, at *9 (N.D.N.Y. 2013) ........................................12

Judge v. Gibson, 2015 WL 926388, at *9 (N.D.N.Y.2015) ...........................................14

Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir.1998).................................................4

Kingsley v. Hendrickson, 135 S.Ct. 2466, 2473–74 (2015)...........................................15

Konovalchuk v. Cermaninaro, 2014 WL 272428, at *16 (N.D.N.Y. 2014).....................14

Malley v. Briggs, 475 U.S. 335, 341 (1986).............................................................19

Martin v. Vermont Dep't of Corr., 2005 WL 1278119, at *7, Fn.3 (D. Vt. May 25, 2005)...........6

Massaro v. Jones, 323 Fed.Appx. 68, 70 (2d Cir. 2009) .............................................19

Messerschmidt v. Millender, 132 S.Ct. 1235, 1244 (2012)...........................................19

Mfon v. Cty. Of Dutchess, 2017 WL 946303 at *3 (S.D.N.Y.) ....................................4

Mont v. Wells, 2023 WL 5018571, at *9 (N.D.N.Y. 2023) .........................................14

Musaid v. Manka, 2016 WL 540806, at *4 (S.D.N.Y. 2016)........................................17

Pearson v. Callahan, 555 U.S. 223, 231 (2009)........................................................18

Perez v. Ponte, 236 F. Supp. 3d 590, 620 (E.D.N.Y. 2017) ........................................8

Pitts v. Onondaga Cty. Sheriff's Dep't, 2009 WL 3165551, at *2–3 (N.D.N.Y. 2009)...............4

Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001) ....................................5

Roach v. Okun, 2017 WL 3638464, at *4 (N.D.N.Y. 2017) .........................................16

v

Rodriguez v. Phillips, 66 F.3d 470, 476 (2d Cir.1995)................................................18

Saucier v. Katz, 533 U.S. 194, 201 (2001) ...............................................................18

Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003) .......................................19

Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) .................................................15

Siegert v. Gilley, 500 U.S. 226, 232 (1991) .............................................................18

Spears v. Curcillo, 2016 WL 5461968, at *10, Fn. 2 (M.D. Pa. Sept. 29, 2016) ..........6

Tangreti v. Bachmann, 983 F.3d 609 (2nd Cir. 2020) .................................................6

Towsley v. Frank, 2010 WL 5394837, at *6 (D. Vt. Dec. 28, 2010) .............................6

United States v. Walsh, 194 F.3d 37, 49-50 (2d. Cir. 1999) ........................................8

Walker v. McClellan, 126 F.3d 127, 129 (2d Cir.1997)...............................................18

Walsh, 194 F.3d at 49 ...........................................................................................11

Walton v. Breeyear, 2007 WL 446010, at Fn. 16 (N.D.N.Y. Feb. 8, 2007)...................6

Whitley v. Abers, 475 U.S. 312, 319-321 (1986) .......................................................12

Wilkins v. Gaddy, 559 U.S. 34, 37-38 (2010) ..........................................................11

## PRELIMINARY STATEMENT

May 21, 2020 was a seemingly normal day at the Albany County Correctional Facility ("ACCF").  Corrections Sgt. Michael Poole ("Sgt. Poole" or Poole) and his escort officer, Heath Furbeck ("Furbeck" or "Officer Furbeck"), were conducting a supervisory round of the A-building.  As they walked through the tier, Sgt. Poole noticed the strong smell of smoke in the air.  The officers could not clearly identify where the smoke was emanating from. However, one thing was clear, whatever the source, the smoke represented a clear violation of the rules and regulations of the facility.  Sgt. Poole remedied the situation by giving a direct order for all inmates to lock into their cells, until the source of the smoke could be identified.  The vast majority of inmates on the tier heard that direct order, and moved towards their cells. That was not the case with Plaintiff, Danny Farrington (hereinafter "Farrington or "Plaintiff").

Mr. Farrington was displeased with Sgt. Poole's order. He believed that it was unjust, and that the inmates were being wrongly restricted.  Rather than address the issue in a calm and measured way, Farrington unleashed a tirade of profanity-laden objections at the Officers.  He encroached on the officer's personal space, and dared them to respond.  After issuing two direct orders, Sgt. Poole removed his taser from his holster to tacitly encourage Farrington's compliance with his orders.   This inflamed Plaintiff further.   Farrington began up the staircase, still arguing, and threatening to "shove that taser up [Poole's] ass".   At this moment, Sgt. Poole recognized the need to regain control before things got out of hand.  He followed Farrington up the staircase, placed his hand on Farrington's shoulder, and began to direct the inmate to his cell. Furbeck followed close behind. As they reached the top

of the staircase, it is undisputed that Farrington suddenly turned towards Sgt. Poole. Based many years of experience, the officer recognized this action as one of aggression, signaling that Farrington intended to fight. Poole responded by placing the inmate on the ground. Officer Furbeck then sprang into action in defense of his Sergeant. Both officers struggled to handcuff Farrington. The inmate deliberately laid the entire weight of his body over his hands to frustrate their efforts. During the struggle, an emergency siren was sounded to alert other officers in the facility that Furbeck and Poole needed assistance. At least six officers heard the alarm, and quickly responded. All they knew was the location of the emergency, and that officers needed assistance. The alarm did not give them specifics on the degree and severity of the emergency. When they got to the A-building, all they could see was an inmate struggling with Poole and Furbeck. Each of them judiciously used appropriate force to restrain a non-compliant Farrington.

Plaintiff claims that his rights to be free from the use of excessive force, under the 8th and 14th Amendment had been violated by all officers involved. He also claims a violation of his 1st Amendment rights, based on the justifiable disciplinary action that was taken against him. Farrington has failed to establish that there are material facts in dispute, which entitle his claims to survive summary judgment. First, Plaintiff has failed to prove several of the named defendant's personal involvement in the alleged excessive force claim. Alternatively, to the extent some of the officers used force, that force was *de minimus* and not constitutionally infirm. The claims against this group of officers should be dismissed, as both personal involvement of each defendant and a constitutionally recognized use of force, are prerequisites of any 42 USC § 1983 claim. Second, Plaintiff's excessive force claims

2

fail under any reasonable analysis of the 8th and 14th Amendments. The County Defendant's actions in no way violated contemporary standards of decency, and/or were objectively reasonable at all times. Third, Plaintiff's 1st Amendment Claim also fails as a matter of law. Farrington has entirely failed to establish either that he was engaged in a protected activity, or that officers took an adverse action against him. Finally, and in the alternative, all officers here are entitled to qualified immunity. Their actions did not clearly violate Plaintiff's rights and were objectively reasonable.

Accordingly, Sgt. Poole, Officer Furbeck, and the six individually named corrections officers who responded to the May 21, 2020 incident (collectively referred to as the "County Defendants") respectfully move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7.1 of the United States District Court for the Northern District of New York ("Local Rule[s]". The County Defendants respectfully request that this Court dismiss Plaintiff's claims in their entirety, on the merits, and with prejudice.

## STATEMENT OF FACTS

The Albany County Defendants respectfully refer the Court and Plaintiff to their Statement of Material Facts dated October 30, 2023, submitted pursuant to Local Rule 7.1(b)(3), for a full recitation of the relevant facts related to this matter.

## STANDARD OF REVIEW

Summary judgment is warranted if the record establishes "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. "[The moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the

3

absence of any genuine issue of material fact." <u>Celotex v. Catrett</u>, 477 U.S. 317, 323–24 (1986).  When the moving party has met this initial responsibility, the burden shifts to the nonmoving party to come forward with "specific facts showing a genuine issue [of material fact] for trial." Fed.R.Civ.P. 56(e)(2).

In opposing the motion, the factual dispute[s] asserted by the non-moving party must be "material". <u>Id</u>.  This materiality element is satisfied only if factual disputes exist which "might affect the outcome of the suit under governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute over a particular issue of fact is not considered to be "material" if the facts at issue are "irrelevant or unnecessary" to the resolution of a particular legal argument.  <u>Id</u>.  The Court's goal is "to isolate and dispose of factually unsupported claims" which have no support in the record.  <u>Mfon v. Cty. Of Dutchess</u>, 2017 WL 946303 at *3 (S.D.N.Y.).

Factual disputes must also be "genuine" for the non-moving party to prevail in opposing a motion for summary judgment. <u>Pitts v. Onondaga Cty. Sheriff's Dep't</u>, 2009 WL 3165551, at *2–3 (N.D.N.Y.  2009). "[T]he [record] evidence [must be] such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>, 477 U.S. 242 at 248.  Significantly, "[c]onclusory allegations, conjecture, and speculation ... are insufficient to create a *genuine* issue of fact." <u>Kerzer v. Kingly Mfg.</u>, 156 F.3d 396, 400 (2d Cir.1998) [citation omitted; *emphasis added*]; <u>see also</u>, Fed.R.Civ.P. 56(e)(2).  Similarly, inadmissible hearsay is insufficient to create a genuine issue of fact, "absent a showing that admissible evidence will be available at trial." <u>Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.</u>, 769 F.2d 919, 924 (2d Cir.1985) (citations omitted).

## ARGUMENT

## POINT I

### PLAINTIFF HAS FAILED TO RAISE AN ISSUE OF MATERIAL FACT ESTABLISHING A TRIABLE ISSUE AS TO THE PERSONAL INVOLVEMENT OF EACH DEFENDANT

Initially, before addressing the substance of the constitutional claims here, Plaintiff's case has a more fundamental defect.   Farrington cannot specifically connect the actions of each involved officer to his alleged injuries.  This is not in dispute.  Plaintiff's inability to establish each defendant's "personal involvement" in the precise injuries he alleges makes summary judgement appropriate.

In order to prevail on his 42 USC §1983 causes of action, against any of the individual officers, Farrington *must* show "a tangible connection between the acts of [each] [officer] and the injuries suffered." Encarnacion v. Connors, 2023 WL 6546247, at *2 (N.D.N.Y. Aug. 7, 2023).  "[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001) (internal citations omitted).  In order to survive summary judgment, at the close of discovery, there must be material facts in dispute regarding " the [specific] acts of a defendant and the injuries suffered." A.S. v. City Sch. Dist. of Albany, 585 F. Supp. 3d 246, 271 (N.D.N.Y. 2022); Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986). In the absence of such material facts, summary judgment should be granted.  See Pitts, 2009 WL 3165551, at *2–3.

Here, while Plaintiff alleges a wide range of injuries, he cannot pinpoint which County Defendant is personally involved in causing them. (See Exhibit "K" at p. 81,

5

lines 7-12 /p.87, lines 12-15 & Exhibit "UU" at p.2).[1]   Quite to the contrary, the

undisputed record evidence establishes that at least, in the case of Officers Lyman,

Dollard, Furbeck, Haley, their limited physical contact with Farrington was not

capable of causing the injuries he claims.[2]   As significant, in regard to the group of

officers as a whole, Plaintiff admits that he cannot connect any officers specific use of

force to his claimed damages. (See Exhibit "K" at p. 81, lines 7-12).   Presumably,

assuming, *arguendo*, that his damages were ultimately proven at trial, Plaintiff

would only be able to speculate as to the precise defendant who is responsible. At the

conclusion of a trial, Farrington could, at best, conclude "someone is to blame",

without even a hint of accuracy.   This is exactly what the Second Circuit has

prohibited. See Tangreti v. Bachmann, 983 F.3d 609 (2nd Cir. 2020).   Therefore,

summary judgement is warranted as the Plaintiff has failed to causally connect the

actions of each Officer to his alleged injuries. (Encarnacion, 2023 WL 6546247 at *2.)

## POINT II

### PLAINTIFF'S EXCESSIVE FORCE CLAIM SHOULD BE ANALYZED UNDER THE EIGHTH AMENDMENT STANDARD

(a) *Plaintiff's status as a Parole violator subjects his claims to Eighth Amendment analysis:*

---

[1] All citations to an Exhibit are references to those contained within the Declaration of Assistant County Attorney Kevin M. Cannizzaro dated October 30, 2023 filed in support of this motion.

[2] *Compare* Exhibit "UU" at p.2 [summarizing the expected testimony on Plaintiff's damages at trial] *with* Exhibit "Y" at p.22, lines 6-15 & Exhibit "II" at p.2 [noting Officer Lyman's force was limited to holding Farrington down as he was handcuffed]; Exhibit "DD" at pp.16-18 & Exhibit "JJ" at 4:21:00 through 4:23:00 [establishing that Officer Dollard's use of force was also limited to assisting with handcuffing Farrington and controlling his head during the struggle]; Exhibit "Z" at pp.19-25 &Exhibit "OO" at 4:20:28 through 4:23:09 & Exhibit "PP" at p.2 [confirming officer Haley's force was limited to "holding [Farrington's] ankles" as he was restrained]; and Exhibits "W" & Exhibit "CC" at p.2 [showing that Officer Furbeck merely controlled Farrington's head and shoulders while assisting in handcuffing him].   None of these actions could be reasonably interpreted by a jury as capable of causing Farrington's alleged traumatic brain injury. (*See* Exhibit "UU" at p.2).

Several courts in the Second Circuit, and elsewhere, have recognized that alleged parole violators incarcerated in a local jail, based on a parole violation, are not "pre-trial" detainees, but rather convicted prisoners, and therefore, their excessive force claims should be analyzed under the Eighth Amendment. See Towsley v. Frank, 2010 WL 5394837, at *6 (D. Vt. Dec. 28, 2010); see also, Walton v. Breeyear, 2007 WL 446010, at Fn. 16 (N.D.N.Y. Feb. 8, 2007)(analyzing a parolee's claims for deliberate indifference under the 8th Amendment rather than the 14th); Martin v. Vermont Dep't of Corr., 2005 WL 1278119, at *7, Fn.3 (D. Vt. May 25, 2005)(holding that conditions of confinement claims by a parole violator held at a local correctional facility should be analyzed under the 8th Amendment not 14th Amendment); Spears v. Curcillo, 2016 WL 5461968, at *10, Fn. 2 (M.D. Pa. Sept. 29, 2016)(recognizing that a parolee's excessive force claims in a county correctional facility are properly analyzed under the 8th Amendment).

The court in Towsley v. Frank [3] recognized that "unlike a typical pretrial detainee, the justification for the detention of a parolee is dual . . . [T]he detention and subsequent re-incarceration of a parolee *are only triggered* by the new arrest; the detention and subsequent re-incarceration *are justified* by the *prior* conviction." 2010 WL 5394837, at *6 (D. Vt. Dec. 28, 2010), quoting, Hamilton v. Lyons, 74 F.3d 99, 103 (5th Cir.1996). The Towsley court went on to acknowledge that "when a parole violator is returned to prison because of a parole violation, the detention is justified

---

[3] The Albany County Defendants are aware, that Towsley can be distinguished factually from the instant action, in that Towsley revolved around an arrest by police, and the interplay between the Fourth and Eighth Amendment standards for excessive force. See Towsley 2010 WL 5394837, at *6 (D. Vt. Dec. 28, 2010). The Court's reasoning in Towsley is useful nonetheless, and has been cited here, because it provides a persuasive analysis of the amenability of parole violators to the Eighth Amendment standard when they are rearrested on a parole violation. (*Id.*).

*both* by [their] prior conviction and existing prison sentence, *and* [their] subsequent parole violation". Id.  Therefore, the Court held that a parole violator's claims could be properly analyzed under the Eighth Amendment not the Fourteenth Amendment. Towsley, 2010 WL 5394837 at *5-6.

Mr. Farrington was arrested in March of 2020, and entered the Albany County Correctional Facility facing allegations that he had violated the terms of his parole. (See Exhibit "K" at p.39, lines 23-25 through p. 40, lines 1 & Exhibit "L").  It is undisputed that Plaintiff had his parole hearing on or about April 14, 2020, nearly a month before the incident that is the focus of the instant action. (See Exhibit "N" [in which Plaintiff explicitly notes the date of his parole violation hearing]).  From that point forward, Plaintiff remained in ACCF awaiting transfer to a state correctional facility. (See Exhibit "K" at p.41 lines 12-16). This Court should apply the Eighth Amendment standard to Plaintiff's claims of excessive force because his status as a parole violator is clear and beyond dispute. See Walton, 2007 WL 446010, at Fn. 16 (N.D.N.Y. Feb. 8, 2007).

*(b)  Plaintiff's excessive force claims fail as a matter of law:*

Under the Eighth Amendment standard, an inmate generally must  show *both* that, objectively,  the actions of a corrections officer violated "contemporary standards of decency" *and* that, subjectively, the corrections officer acted with a "sufficiently culpable state of mind".  United States v. Walsh, 194 F.3d 37, 49-50 (2d. Cir. 1999); Blyden v. Mancusi, 186 F.3d, 252, 262 (2d Cir. 1999); Perez v. Ponte, 236 F. Supp. 3d 590, 620 (E.D.N.Y. 2017).

(i)     *Sgt. Poole's  use of force did not violate contemporary standards of decency*:

Sgt. Poole carried nearly two decades of experience with him as he made his supervisory round of the A-building, on May 21, 2020. (See Exhibit "P" at p.10, lines 10-14 [noting Poole's employment with ACCF began in the year 2001]). The moment that he and Officer Furbeck noticed the strong smell of smoke on the tier, they exercised their sound discretion, and ordered all inmates to lock in, until the rule infraction could be addressed. (See Exhibit "J" at p.30, lines 9-15 & Exhibit "P" at p.17 lines 6-25 through p.22). This represented Sgt. Poole's first direct order for all inmates to "lock in" and return to their cells. (See Exhibit "J" at p.31, lines 14-18 & Exhibit "P" at p.22, lines12-16). The vast majority of inmates complied with Poole's order. (See Exhibit "P" at p.23 lines 7-12; Exhibit "U"). In fact, of the twenty-eight inmates on the tier that day, only one raised any protest to the directive to "lock in": Mr. Farrington. (See Exhibit "P" at p.23, lines 7-12 & Exhibit "S" at p.1 & Exhibit "U"). Plaintiff immediately voiced his displeasure at the order, saying "this is fucked up". (See Exhibit "P" at p.23, lines 7-12 & Exhibit "K" at p.64, lines 11-17). He was upset at the idea that "40 other guys get locked in because [Poole] smell[ed] smoke", and further protested that all the other inmates should not suffer because of the actions of someone else. (See Exhibit "K" at p.64 lines 11-25 through p.65, lines 2-8; Exhibit "U"). Farrington felt that the order was "Peter paying for Paul", and that the order was "bullshit". (See Exhibit "J" at p.34, lines 5-9 & Exhibit "K" at p. 64, lines 24-25 through p.65., line 1 & Exhibit "P" at p.23, lines 7-22). He "quickly came into [Sgt. Poole's] personal space" and continued to angrily yell in the officer's face and took an aggressive posture. (See Exhibit "P" at p.25 & Exhibit "S" at p.1 & Exhibit "U", generally). Multiple uninvolved inmates were outside of their cells, unrestrained and watching the tense situation. (See Exhibit "J" at p.36, lines 16-22 & Exhibit "U"

9

[showing at least four inmates outside of their cells] & Exhibit "K" at p.73 lines, 20-25 [confirming the situation was tense]).

Sgt. Poole then gave a second direct order for the inmate to go to his cell and "lock in", despite Farrington's objection. (See Exhibit "P" at p.25, lines 13-19). Recognizing that the situation was escalating, Sgt. Poole drew his taser, in an attempt to gain Mr. Farrington's compliance with the two direct orders. (See Exhibit "K" at p. 68 & Exhibit "S" at p.1 & Exhibit "U").  Sgt. Poole briefly held the taser in his right hand during the incident, and quickly placed it back in his holster, as Plaintiff walked up the stairs while simultaneously making threats to "shove that taser in [Poole's] ass". (See Exhibit "K" pp.68-69 & Exhibit "P" at p.26, lines 1-6 & Exhibit "U").

It is undisputed that Plaintiff continued to argue despite acknowledging that Sgt. Poole's orders were "absolute" and were expected to be obeyed, or consequences would ensue. (See Exhibit "K" at p.66, lines 12-22).  As Farrington proceeded up the staircase, he stopped in a "threatening manner", and indicated that he would "shove that taser up [Poole's] ass". (See Exhibit "P" at p.26, lines 5-6 & Exhibit "K" at p.70, lines 8-16 & Exhibit "S" at p.1 & Exhibit "U").  Plaintiff continued walking up the stairs while making threats. (See Exhibit "S" at p.1 & Exhibit "U").  Sgt. Poole then followed the inmate up the stairs, and directed him up the staircase, utilizing soft hand techniques, in an effort to get Farrington up to his cell on the second floor. (See Exhibit "P" at p.17, lines 19-22/ p.26 lines 7-11 & Exhibit "U").  Sgt. Poole's intent was to be on even ground, so that in the event the incident escalated, he would not have to fight on the uneven stairwell. (See Exhibit "P" at p.66, lines 10-25 & Exhibit "S" at p.1).

As both Poole and Farrington got to the top of the staircase, Plaintiff turned towards the Sergeant and "planted his right foot" (See Exhibit "P" at 31, lines 1-4 & Exhibit "Q" at p.52, lines 6-25 & Exhibit "S" at p.1 & Exhibit "T" at p.2 & Exhibit "U"). Mr. Farrington confirmed that he "[turned] to [Poole]" because he believed that Poole "couldn't hear" his protestations (See Exhibit "V", p.1). The fact that Farrington turned towards Sgt. Poole at the top of the stairs is wholly undisputed. (See Exhibit "P" at 31, lines 1-4 & Exhibit "U" & Exhibit "V", p.1). At that moment Sgt. Poole believed that Farrington appeared "ready to go, he was ready to fight". (See Exhibit "P" at p.31, lines 6-9). In order to regain control, and quickly diffuse the dangerous situation, Sgt. Poole "grabbed a hold of [Farrington] and attempted to get Farrington to the floor", which he ultimately did. (See Exhibit "P" at p.32, lines 4-12 & Exhibit "Q" at p. 53, lines 6-25 & Exhibit "U"). Officer Furbeck assisted Sgt. Poole with bringing Plaintiff to the ground. (See Exhibit "P" at p.37, lines 16-25 & Exhibit "U" & Exhibit "W").

Mr. Farrington admits that, at this point, Furbeck was not using any force on him other than ordering him to lay on the ground (See Exhibit "K" p.72, lines 9-17). Officer Furbeck's body camera confirms that his force was restrained to holding Farrington's head and shoulder as he struggled, and assisting in getting him handcuffed. (See Exhibit "W" at 4:19:00 through 4:22:00 & and Exhibit "BB"). Furbeck was not using any force on him other than ordering him to lay on the ground (See Exhibit "K" p.72, lines 9-17).

Meanwhile, the only force used by Sgt. Poole at that point was geared towards holding Farrington to the ground until responding officers could arrive, and trying to get the inmate under control and handcuffed. (See Exhibit "P" at p. 43, lines 9-23 &

11

Exhibit "U" & Exhibit "BB").   As the emergency alarm rang, the only force that Poole used was to hold Farrington on the ground by controlling Plaintiff's shoulder and back areas. (See Exhibit "P" at p.43 lines 9-25).   Once responsive officers arrived, both continued to struggle with Farrington and eventually got him handcuffed. (Id.).   Once handcuffed, neither Poole nor Furbeck used any other force on Farrington or were they involved in escorting Farrington down the stairs. (See Exhibit "P" at p.49 lines 21-25 /p.51 lines 4-5 & Exhibit "W" at 4:19:00 through 4:22:00).

These facts related to the force used by Poole are not genuinely in dispute. None of the above referenced uses of force by Sgt. Poole violated contemporary standards of decency, and Plaintiff has failed to raise issues of material fact which alter the County Defendants entitlement to summary judgment. See Walsh, 194 F.3d at 49; Coffey v. Hollenbeck, 2016 WL 770087, at *10 (N.D.N.Y. 2016)(noting that to represent a violation the force used must be of the "sort that is repugnant to the conscience of mankind") .

(ii)   *Several of the individual officers use of force was de minimus and they should be dismissed from this case:*

Under every applicable standard, to be constitutionally actionable, an alleged use of force must be more than *de minimis*.  See e.g.  Ingraham v. Wright, 430 U.S. 651, 674 (1977)(recognizing that the force used needs to be more than minor to violate the Fourteenth Amendment); Wilkins v. Gaddy, 559 U.S. 34, 37-38 (2010)(holding that not every malevolent touch by a prison guard rises to a constitutional violation under Eighth Amendment); Bruno v. City of Schenectady, 2014 WL 689664, at *16 (N.D.N.Y.2014)(applying *de minimis* force analysis to a Fourth Amendment excessive force claim); see also, Coffey v. Hollenbeck, 2016 WL 770087, at *10 (N.D.N.Y.

12

2016)(applying *de minimis* force analysis to Eighth Amendment excessive force claim). In determining whether a use of force is more than *de minimis* "the core judicial inquiry" focuses "*not* [on] whether a certain quantum of injury was sustained, *but rather*, whether the force was applied in a good faith effort to restore discipline …" Wilkins, 559 U.S. at 37-38, quoting, Hudson v. McMillian, 503 U.S. 1, at 7 (1992); see also Whitley v. Abers, 475 U.S. 312, 319-321 (1986).  The force at issue in a particular case must be of the "sort that is repugnant to the conscience of mankind" to fall within the purview of constitutional analysis.  United States v. Walsh, 194 F.3d 37, 49 (2d Cir. 1999); Coffey v. Hollenbeck, 2016 WL 770087, at *10 (N.D.N.Y. 2016).

While it is true that the severity of an injury sustained by a plaintiff is not dispositive, it is equally true that at least *some* "degree of injury is ordinarily required" to bring a claim of excessive force into the constitutional realm. Walsh, 194 F.3d at 50; see e.g.  Atkinson v. Huntington, 2016 WL 8735651, at *9-*10 (N.D.N.Y. 2016), report and recommendation adopted, 2016 WL 4991616 (N.D.N.Y. 2016)(granting summary judgment to defendant and finding no excessive force was used after a pretrial detainee failed to submit evidence establishing that he sustained an actual injury).  An officer may point to the fact that there is no admissible evidence which establishes an actual injury to circumstantially prove that the force used was *de minimis*. see Johnson v. Schiff, 2013 WL 5466218, at *9 (N.D.N.Y. 2013); Blackwell v. Town of Greenburgh, 2017 WL 1157168, at *11 (S.D.N.Y. 2017).[4]

---

[4] Significantly, the Second Circuit, and every District Court therein, has recognized that a Plaintiff *must* prove that he sustained *at least some degree of injury* that was *causally related* to the alleged use of excessive force to state a cause of action upon which relief can be granted.  see Perez v. Ponte, 236 F. Supp. 3d 590, 622 (E.D.N.Y. 2017); Flemming v. King, 2016 WL 5219995, at *3 (N.D.N.Y. 2016), report and recommendation adopted, 2016 WL 5173282(" The Second Circuit has noted its agreement with other circuits that 'some degree of injury is ordinarily required to state a claim for [excessive force.]'"), quoting, Benjamin v. Flores, 2012 WL 5289513, at *3 (E.D.N.Y. 2012)); see e.g. Chavis v.

13

Here, the undisputed record establishes that Officers Furbeck, Livreri, Dollard, Lyman, Haley, Cohen, and Getting's should be dismissed from this case as the force each used was *de minimus.*

In the case of Officers Lyman, Dollard, Haley and Furbeck, the force used by each came only as they acted in supportive roles, restraining Plaintiff's arms, legs, and head as Farrington was handcuffed. (See e.g., Exhibit "Y" at p.22, lines 6-15 & Exhibit "II" at p.2 [noting Officer Lyman's force was limited to holding Farrington down as he was handcuffed]; Exhibit "DD" at pp.16-18 & Exhibit "JJ" at 4:21:00 through 4:23:00 [establishing that Officer Dollard's use of force was also limited to assisting with handcuffing Farrington and controlling his head during the struggle]; Exhibit "Z" at pp.19-25 &Exhibit "OO" at 4:20:28 through 4:23:09 & Exhibit "PP" at p.2 [confirming officer Haley's force was limited to "holding [Farrington's] ankles" as he was restrained]; and Exhibits "W" & Exhibit "CC" at p.2 [showing that Officer Furbeck merely controlled Farrington's head and shoulders while assisting in handcuffing him]).[5]   Similarly, even in the case of officers Cohen and Gettings, the force they used was minimal, was applied in good faith, and certainly not

---

Chappius, 2015 WL 1472117, at *6 (W.D.N.Y. 2015)(dismissing an Eighth Amendment claim where the complaint "does not allege any physical injury that occurred as a result of the [defendant's act]"); Munlyn v. Pietrie, 2014 WL 3695488, at *4 (W.D.N.Y. 2014) (dismissing an Eighth Amendment claim where the complaint failed to allege "that [the] [p]laintiff suffered harm or physical injury"); Flemming v. Kemp, 2012 WL 4094196, at *13 (N.D.N.Y. 2012) (finding insufficient plaintiff's "allegations that the use of chemical agents was excessive force" where "the use of such chemicals did not cause any harm or pain to [him]"), adopted by, 2012 WL 4094009 (N.D.N.Y. 2012).

[5]  Plaintiff does not dispute the use of force used by each of these officers.  In fact, Plaintiff cannot do so as he made clear during the course of his 50-h testimony, and deposition, that has no personal knowledge of the specific force used on him by each officer who responded to the alarm on May 21, 2020. (See Exhibit "J" at p.43, lines 21-24 & Exhibit "K" at p.70, lines 23-25 through p.71, lines 1-5/ p.81, lines 7-12 / p.87, lines 12-15).  Each of these individual officer's use of force can only be discerned from the officers testimony, relevant documentation they produced, and video footage which exists of the incident and laid out in the County Defendants Statement of material facts.  That evidence cannot be disputed by Plaintiff as he lacks admissible evidence to challenge it.

constitutionally offensive. (<u>See</u> Exhibit "EE" at p.16, lines 5-8 / p.17, lines 6-16 & Exhibit "LL" at 4:20:37 through 4:20:56 & Exhibit "MM" at p.2 [noting that Cohen used minor strikes to gain Farrington's compliance]; Exhibit "X" at p.24, lines 4-25/ Exhibit "NN" at p.2 [addressing Officer Getting's minimal use of force geared at gaining Farrington's compliance]).

Finally, Officer Livreri's force is also undisputed, and was limited to utilizing his pepper spray on Plaintiff during the struggle. (<u>See</u> Exhibit "AA" at p.21, lines 206 & Exhibit "FF" at p. 2 & Exhibit "GG" at 4:20:09 through 4:21:00 ).  Livreri, as well as other officers, can be heard giving commands to Farrington to "stop resisting" and "give up your hands" prior to the use of a chemical agent. (Exhibit "GG" at 4:20:09 through 4:20:11).   Livreri judiciously used only two, one second sprays, of pepper spray in "Farrington's" facial area" in order to gain compliance with staff commands and gain the inmates compliance. (<u>Id</u>. & Exhibit "AA" at p.27, lines 9-23).

Each of the above officer's use of force epitomize *de minimus* force, and cannot form the basis for an excessive force claim. <u>see</u> <u>e.g.</u>, <u>Judge v. Gibson</u>, 2015 WL 926388, at *9 (N.D.N.Y.2015)(holding that an inmate's claim that he was grabbed by the back of the neck did not "shock the conscience" and was de minimis); <u>Konovalchuk v. Cermaninaro</u>, 2014 WL 272428, at *16 (N.D.N.Y. 2014)(finding that police gripping an arrestee's neck did not "rise to the level of a constitutional violation").  This Court should grant summary judgment in regard to the Plaintiff's claims against Furbeck, Haley, Lyman, Dollard, Cohen, Livreri and Gettings accordingly. <u>See</u> <u>Flemming v. King</u>, 2016 WL 5219995, at *3 (N.D.N.Y. 2016).

    (iii)   *Plaintiff has failed to establish the subjective component in relation to every defendant*

The subjective element of the 8th amendment standard requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." <u>Mont v. Wells</u>, 2023 WL 5018571, at *9 (N.D.N.Y. 2023).

The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " Id. (quoting Hudson, 503 U.S. at 7). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: the extent of the injury and the mental state of the defendant; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response. <u>Scott v. Coughlin</u>, 344 F.3d 282, 291 (2d Cir. 2003).

Plaintiff has entirely failed to satisfy this element of the Eighth Amendment. Each of the involved officers used force only as necessary to maintain the order in the facility.   They all responded to an emergency situation at the facility, and acted to restore order and address that situation.   Plaintiff can point to no record evidence which indicates that any of the officers acted "sadistically or with the intent to cause harm", and therefore summary judgment is warranted here. (<u>Scott v. Coughlin</u>, 344 F.3d 282, 291 (2d Cir. 2003).

## POINT III

### PLAINITFF'S EXCESSIVE FORCE CLAIMS FAIL UNDER THE FOURTEENTH AMENDMENT STANDARD AS WELL

Alternatively, even if the Court were inclined to apply the Fourteenth Amendment excessive force standard, which it should not, Mr. Farrington's Claims still fail. Each of the involved officer's use of force was "objectively reasonable" in light of the facts and circumstances known to officers on the afternoon of May 21, 2020.

In the last eight years, the Supreme Court adopted a new test for pretrial detainee excessive force claims, and directed that the force at issue be analyzed through the lens of an "objective reasonableness" test under the Due Process Clause of the Fourteenth Amendment.  see Kingsley v. Hendrickson, 135 S.Ct. 2466, 2473–74 (2015).   The Supreme Court made clear that the subjective beliefs and or state of mind of a prison employee was no longer relevant in examining a pretrial detainee's excessive force claims. see Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017).

"The right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." Walsh, 194 F.3d 37, 47 (2d. Cir. 1999) citing Bell v. Wolfish, 441 U.S. 520, 535 (1979); see also Atkinson v. Huntington, 2016 WL 8735651, at *3 (N.D.N.Y. Aug. 19, 2016). In order to prevail, a plaintiff must establish that the force used against him was used "purposely or knowingly" and that the level of force used was "objectively unreasonable".   Kingsley, 135 S.Ct. 2466 at 2473–74.   In other words, the new standard in the pretrial detainee context is "solely an objective one".   Perez, 236 F.

Supp. 3d at 620-621.[6]   In <u>Kingsley</u>, the Court pointed to several relevant factors in analyzing this objective standard including:

> " the relationship between the need for the use of force and the amount of force used; the extent of plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." <u>Id</u>. at 2473; <u>see</u> <u>also</u> <u>Roach v. Okun</u>, 2017 WL 3638464, at *4 (N.D.N.Y. 2017).

A court cannot apply the objective standard in the abstract. <u>see</u> <u>Kingsley</u>, 135 S.Ct. 2466 at 2472-73. Rather, the force used must be examined "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." <u>Id</u>. at 2474. The question of "objective reasonableness" necessarily depends on the "facts and circumstances of each particular case." <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989); <u>Musaid v. Manka</u>, 2016 WL 540806, at *4 (S.D.N.Y. 2016).

Courts must also take into account "the legitimate interests that stem from [the officer's] need to manage the facility in which the [inmate] is detained", and must "[defer] to policies and practices that in the judgment of jail officials" are necessary "[to preserve] internal order and discipline and to maintain institutional security." <u>Kingsley</u>, 135 S.Ct. 2466 at 2472-73, <u>quoting</u>, <u>Bell v. Wolfish</u>, 441 U.S. 520, 540 (1979). The use of an objective standard protects the officer "who acts in good faith". <u>Kingsley</u>, 135 S.Ct. 2466 at 2474.

---

[6] The Fourteenth Amendment standard has been analogized to the standard for excessive force under the Fourth Amendment that is normally applicable in the context of police arrests. <u>see</u> <u>Jackson v. City of White Plains</u>, 2015 WL 4739762, at *4 (S.D.N.Y. 2015); <u>Blake v. Base</u>, 1998 WL 642621, at *12 (N.D.N.Y. 1998). There is good reason for this comparison given the similarity in the standards. <u>compare</u> <u>Kingsley v. Hendrickson</u>, 135 S.Ct. 2466, 2473-75 (2015)(explaining the 14th Amendment standard for excessive force), <u>with</u> , <u>Graham v. Connor</u>, 490 U.S. 386, 396-399 (1989)(enunciating the 4th Amendment standard for excessive force). These standards both are focused solely on an objective assessment of an officer's actions and are functionally equivalent to each other. (<u>Id</u>.)

Sgt. Poole, Corrections Officer Furbeck, and the six (6) responding officers acted reasonably on May 21, 2020 to re-gain control of a situation that posed an imminent threat to the safety and security of the facility. (See Point II(b)(i)-(ii), *supra*). In regard to Sgt. Poole, his use of force was preceded by several warnings and direct commands to gain Farrington's compliance. Only when the Plaintiff aggressively turned on Poole, did he decide that he needed to act to maintain order. In terms of the responding officers, each knew very little when they heard the emergency" horn sound, indicating an officer was in trouble. (See Exhibit "AA" at p.11, lines 23-25 through p.12, lines 1-2 & Exhibit "Z" at pp.20-21). They had very little information regarding the nature of the emergency beyond that. (See Exhibit "DD" at p.12, lines 10-25). As they arrived on the A-building, all agree that they saw an inmate struggling on the ground with officers, appearing to resist handcuffs. (See Exhibit "Y" at p. 17, lines 1-12 /p.19, lines 20-24 & Exhibit *"AA"* at p. 19, lines 2-9).

The Court is obligated to view the incident from the viewpoint of the officers at the time it occurred. See Kingsley, 135 S.Ct. 2466 at 2472-74. Through this lens, one thing is clear: the officer's actions in the face of a security emergency was "objectively reasonable" and there was no violation of the 14th Amendment. Therefore, to the extent the Court were to view the officers' actions through the 14th amendment lens, the officers are still entitled to summary judgment.

## POINT IV

## THE ALBANY COUNTY DEFENDANTS ARE ALL ENTITLED TO QUALIFIED IMMUNITY

"Qualified immunity balances two important interests- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "The immunity protects prison officials from personal liability under § 1983 when their 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Walker v. McClellan, 126 F.3d 127, 129 (2d Cir.1997), quoting, Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

"In determining whether a right was clearly established at the time [County Defendants] acted, we examine whether the right was defined with reasonable specificity; whether the decisional law of the Supreme Court and the applicable circuit court supports its existence; and whether, under preexisting law, [Defendants] would have reasonably understood that [their] acts were unlawful." Rodriguez v. Phillips, 66 F.3d 470, 476 (2d Cir.1995). The first step in this analysis requires assessing whether, "[t]aken in a light most favorable to the party asserting the inquiry, do the facts alleged show an officer's conduct violated a constitutional right?". Saucier v. Katz, 533 U.S. 194, 201 (2001), citing, Siegert v. Gilley, 500 U.S. 226, 232 (1991). "Second, was the right so clearly established that a reasonable government official would have known that her conduct violated a constitutional right 'in light of the specific context of the case, [and] not as a broad general proposition [?]". Id. In the alternative, a government official is shielded from liability for civil damages from

20

his performance of discretionary functions so long as his actions would have been "objectively reasonable for the official to believe his conduct did not violate plaintiff's rights." Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003). Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." Messerschmidt v. Millender, 132 S.Ct. 1235, 1244 (2012); Dancy v. McGuinley, 843 F.3d 93, 106 (2d Cir. 2016), quoting, Malley v. Briggs, 475 U.S. 335, 341 (1986).

Here, the case law established at the time of the incident on May 21, 2020, far from suggesting that Farrington's constitutional rights were violated, demonstrates the opposite: that the County Defendants actions in response to Plaintiff's noncompliance with multiple direct orders was in accord with the Constitution and plaintiff's rights. see e.g., Judge v. Gibson, 2015 WL 926388, at *9 (N.D.N.Y. 2015(holding that an inmate's claim that he was grabbed by the back of the neck did not "shock the conscience" and was not a constitutional violation); Konovalchuk v. Cermaninaro, 2014 WL 272428, at *16 (N.D.N.Y. 2014)(finding that police gripping an arrestee's neck did not "rise to the level of a constitutional violation"); Husbands ex rel. Forde v. City of New York, 335 Fed.Appx. 124, 129 (2d Cir., 2009) (holding that "one punch causing no injury to a suspect who is resisting being put in handcuffs does not rise to the level of excessive force"); see also Massaro v. Jones, 323 Fed.Appx. 68, 70 (2d Cir. 2009) (finding no excessive force where officers kicked defendant over a 15–20 second period during his arrest); Cunningham v. McCluskey, 2011 WL 2791336, at *7 (S.D.N.Y. 2011) (court granting defendant's motion to dismiss, holding "[plaintiff's] testimony that [officer] grabbed his shirt and pulled him outside of his

21

home and punched him in the stomach, prior to handcuffing him, is insufficient, as a matter of law, to support a claim of excessive force").

Each of the Albany County Defendants are, in the alternative, entitled to qualified immunity on any excessive force claim, as their actions fall squarely within the immense body of case-law noted above.

## POINT V

### PLAINTIFF'S AGRUMENTS WITH THE CORRECTIONS OFFICERS OVER LAWFUL ORDERS AND SUBSEQUENT DISCIPLINE DOES NOT STATE A CAUSE OF ACTION UNDER THE FIRST AMENDMENT

Plaintiff's Complaint alleges a First Amendment violation against Officer's Furbeck and Poole related to a disciplinary report issued against him on the night of May 21, 2020. (See Exhibit "A" at ¶¶17-19, ¶¶26-28, & ¶¶36-38). He has entirely failed to raise material issues of fact, which establish any of the elements of a viable claim.

In order to establish a First Amendment retaliation, claim under §1983, a prisoner must show that: (1) he engaged in protected speech or activity; (2) the defendant took adverse action against him; and (3) there was a causal connection between the protected speech or activity, and the adverse action. See Espinal v. Goord, 554 F.3d 216, 227 (2d Cir.2009). An adverse action is "conduct that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights." Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir.2004) (internal quotation marks omitted). To show retaliation, a plaintiff must demonstrate that constitutionally protected conduct was a substantial or motivating factor for a prison official's adverse action. See Bennett v. Goord, 343 F.3d 133, 137 (2d Cir.2003).

Courts are cautioned to approach prisoner retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003) (internal quotation marks omitted). As such, courts "have consistently required some ... evidence of retaliatory animus [greater than temporal proximity alone] before permitting a prisoner to proceed to trial on a retaliation claim." *Faulk v. Fisher,* 545 Fed.Appx. 56, 58 (2d Cir.2013) (unpublished opinion).

Here Plaintiff has failed to adduce material facts which are in dispute which establish the viability of his first amendment claim. Quite to the contrary, Plaintiff unequivocally agrees that no such claim exists. (See Exhibit "K" at p. 111, lines 7-16). To this day, he cannot articulate the basis for his First Amendment claim. (See Exhibit "K" at p.105, lines 1-21). During the course of his examination before trial, Farrington agreed that, although he was issued a disciplinary ticket, it was in no way intended to punish him for the incident that happened in the A-building. (See Exhibit "K" at p.112, lines 2-22). Moreover, the disciplinary action taken against him was not sufficient to discourage him from filing and pursuing grievances against officers involved in the May 21, 2020 incident (See Exhibit "K" at p.115, lines 4-25 through p.116 lines 1-3 & Exhibit "V" pp.1-5 [showing grievances Farrington pursued] & Exhibit "TT"[reflecting the decision of the NYS Commission on Corrections]). Therefore, assuming *arguendo*, that Plaintiff was engaged in a constitutionally protected activity, he admits that his claim fails because there was no adverse action

23

taken against him, let alone one causally related to the protected right.(See Exhibit "K" at p.115, lines 4-25 through p.116 lines 1-3).[7]

In short, Plaintiff has wholly failed to establish any of the elements necessary to sustain a 1st Amendment retaliation claim under 42 USC §1982, and the County Defendants should be granted summary judgment on the issue. See Espinal, 554 F.3d at 227; see also Gill, 389 F.3d at 381; Faulk, 545 Fed. Appx. at 58.

## CONCLUSION

In view of the foregoing Points, it is respectfully submitted that the Albany County Defendants have met their burden of proof on this motion and are entitled to dismissal of the Complaint in its entirety, on the merits, and with prejudice.  They are entitled to an Order of granting summary judgment dismissing Plaintiff's Causes of Action as against them as a matter of law.

**Dated: October 30, 2023**

Respectfully submitted,

**EUGENIA K. CONDON, ESQ.**
**ALBANY COUNTY ATTORNEY**

By: _____
Kevin M. Cannizzaro, Esq.
NDNY Bar Roll No. 519957CC
Assistant Albany County Attorney
*Attorneys for the Albany County Defendants*
112 State Street, 6th Floor
Albany, New York 12207
P: (518) 447-7110 - F: (518) 447-5564

---

[7] To be clear, the Albany County defendants do not believe that Plaintiff has met even the first element of a First Amendment claim, as he has failed to establish that there are issues of material fact showing he was engaged in a protected activity.  The Second Circuit is clear that not every comment made by an inmate is protected under the First Amendment. (See Burns v. Martuscello, 890 F.3d 77, 86-87 (2d Cir. 2018)(noting that an inmate only "retains those First Amendment rights not inconsistent with [their] status as a prisoner or with legitimate penological objectives of the corrections system") quoting Shakur v. Selskey, 391 F.3d 106, 113 (2d Cir. 2004).  Plaintiff's profane arguments with Corrections Officers on May 21, 2020 was not a protected activity in the jailhouse context.

**TO:**

SIVIN, MILLER & ROCHE, LLP
Edward Sivin, Esq.
Bar Roll No. 514765
20 Vessey Street, Suite 1400
New York, NY 10007
Telephone: (212) 349-0300
Email:  esivin@sivinmiller.com